And we'll move to the final case of the day, U.S. v. Briggs, which is number 18-1415. Ms. Varner. Good morning. May it please the court. Thank you for the font in your brief. You're My name is Sarah Varner and I represent Alandous Briggs. Mr. Briggs comes to you today following his criminal case in the Southern District of Indiana, where the district court imposed a four-level increase to his offense level based on possession of a firearm in connection with another felony offense. Mr. Briggs, at the time of his arrest, possessed guns and he possessed drugs. However, there is no The evidence is insufficient to show that his possession of guns aided or helped or emboldened or had any purpose in connection with his simple drug possession. The sentencing guidelines treat differently cases where the facilitated offense is a drug trafficking offense and where the facilitated offense is another felony, such as drug possession. And I think that there's some sense in that, as was presented in the brief, and it comes from the sense of danger. I've seen some cases refer to this as the fortress theory, but the premise is that if a defendant is in possession of a large amount of drugs and is involved in drug trafficking and has those drugs stored in his home, that it's just an increased danger in that case, that the defendant will be dealing with customers, with suppliers, that money will be changing hands, and that there's an increased risk that the police will confront the home at some point, and that a weapon just increases the danger in those cases. And so a presumption arises at that point that's embraced by the guidelines that says if you possess that gun and you have the drugs together there, that proximity in that case is enough. Now, the difference between the trafficking offense and another felony offense, in this case possession, is an important one, because it tells us first that when the offense is simple possession, that proximity is not going to be enough, that something more is required. And it also tells us which set of cases that we need to look at, and I think that's important. Counsel, can I ask you a question? In the PSR, it said there were 29 grams of marijuana, but in the district court, and sentencing and then again in the briefs, both the government and you say 299 grams. And the reason, I mean, it seems to me that now that's waived, it's 299, but the difference is pretty significant, and that amount of marijuana would be worth a lot more money than 29 grams. Why the discrepancy? I think that 299 is correct. So the PSR must have been wrong. I think the PSR was an error, yes. Okay. What relevance, so possessing the marijuana isn't a felony under Indiana law. Correct. Is there any relevance to the fact that you have a large amount, a relatively large amount of marijuana that was worth, you know, I don't know, a couple thousand dollars based on, don't worry, I'm not taking judicial notice of that, but based on my internet searches, let's imagine. I do a lot of internet searching in this case, too. Yeah. Let's just imagine, you know, I think we can just infer, listen, that's a reasonable amount of marijuana, and he had a gun near it. If he's trying to protect the collective stash, does it make any difference, in other words, that the marijuana was there versus a scenario where you had only the cocaine there in the gun? Does the marijuana have any bearing? I don't think so because I think when you're speaking in terms of marijuana and reading cases about possession and especially possession with intent to distribute marijuana, that 299 grams sounds like a lot, but that's essentially 10 ounces of marijuana, which is considerably less than a pound, and it's still just a pretty small amount of marijuana in the grand scheme of things. And when we're looking at the trafficking cases, which is what the government relied wholly on, we have something very different in those cases. Those cases involve known drug dealers. Those cases often involve defendants that have a prior conviction for drug dealing. There's absolutely no evidence in this case that Mr. Briggs has ever been involved in a drug transaction or was likely to be involved in a drug transaction. Also, we have drugs packaged for sale. There's no drugs packaged for sale here, even though it was 10 ounces of marijuana. It was packaged like personal use drugs. How was it packaged? In a clear mason jar in his bedroom. Like a jar of tea? Yep, which Google tells me is the normal way. There's often baggies or items that could be used to package the drugs. There's often drug ledgers or chemicals used for cutting drugs or multiple sets of scales, and in this case, we just don't have that. Why multiple sets of scales? We do have a digital scale. We do have one digital scale, but just in kind of reading over the cases that the government cited, I just went through and made notes for myself what were the factors that were present, and often it's multiple scales. But those are factors necessary to find that it was trafficking. Yes. So we have an ambiguous statement. So I guess I'm speaking to the point, Your Honor, that the government is alleging that the district court found drug trafficking in this case. Let's assume the district court didn't. Did not, okay. And let's assume that the argument is that the gun was there to facilitate the possession. Okay, and in that case, I think it's really important for us to then look at the cases that deal specifically with possession, and that is what we presented in our brief. Talking about the distinction between being in public and being emboldened versus being in your home. Yes, Your Honor. Yes. And I think that's, you know, we don't represent that to be a bright-line rule. And, in fact, this morning I was trying to think of, like, what circumstances in this particular case maybe would have made his possession of the drugs and the guns in his home satisfy. And so I thought, it's in the record that when his cell phone was seized from him that there were pictures on his cell phone. And in the pictures on his cell phone, you see him possessing the guns in one instance or another. If those pictures perhaps had presented him possessing both the gun and the drugs, and maybe sending a text to a friend saying, no one better bother my stash, in that case I think... Well, that would be a better case for the government, right? But, I mean, you know, he has guns, and he might be bragging in these text pictures about having guns. But that wouldn't preclude him using the guns. I mean, it's conceivable to me that somebody might have a personal stash, you know, that they wanted to protect, especially if they suspected people would be around that would want to invade their personal stash. I think that's true. I don't think it's presented in this case. I think that what is presented in this case, and we did reach out a little outside of the record in the fashion of Judge Posner to include the information about the Hobville neighborhood in Indianapolis. The government actually brought up at the sentencing hearing that Mr. Briggs had been robbed before in his home. And he told the officers at the time when they searched his home that those guns were possessed in his home because of that prior home invasion. He'd also been shot in 2008 and has a metal rod in his leg. The fact that he simultaneously, and I think we also run the risk of falling back on the presumption that because you have them there together, one must be there to protect the other. And the sentencing guidelines, if we fall back on that presumption, we're giving no weight or credit to the fact that the sentencing guidelines were changed to say if it's drug trafficking and they're in proximity, we're going to apply a presumption that you used it to protect those drugs. And we just don't have any evidence of that here. Instead, we have evidence in the record to show he was using those guns, that he possessed the drugs, he possessed the guns, but the guns were, it was coincidental. He lived in one of the most dangerous neighborhoods in Indianapolis, and he possessed those. Counsel, you're right into your rebuttal time, you know. Okay, thank you. But before, I'd like to ask you a couple of quick questions. Yes, go ahead. One, do you think the evidence here with the scales would have at least permitted a finding of drug trafficking? I don't think it's enough. As I said, going through the factors that the government... Okay. And second question here, is there any sign in this record that the district judge based her sentence more on 3553A than the guidelines, in essence saying this doesn't matter that much to me? I don't think so. This was by the numbers? I think she gave him a low-guideline sentence, and that she would have given him, I think the presumption is, that had the guideline been lower, she would have sentenced lower. Okay, she didn't say otherwise. No. Okay, all right. Thank you very much, Ms. Barnard. Mr. Murkowski for the government. Good afternoon. May it please the Court, Counsel. This Court should affirm the judgment of the district court here. I understand, certainly I've got difference of opinion with Ms. Barnard as to the import of some of the evidence that the court, the district court properly found was relevant in this case, and I do think that the record shows that the district court found that the defendant possessed three loaded firearms in connection with drug trafficking. Where do you think she found that? I'm sorry, do you want a record citation? I'm just looking at the sentencing transcript. Yes, Judge. I think it's on page 29 in the supplemental appendix 11. The court refers specifically to the digital scales, which indicates some type of drug trafficking possibly, and also the finding that there was no personal use items that were found in the bedroom in the same, which is where the firearms were found, in the defendant's residence, Your Honor. To me, that's a finding that this was a drug trafficking crime. It is. And take a look, and the court doesn't even have to go so far as to find that the felony was trafficking? Yes, Judge. Using drugs? And I addressed that in the brief. I think that a fair reading of that is that, as the judge stated, she didn't even have to find trafficking, that in fact mere possession would be sufficient for application of the four-level enhancement. Counsel, let's assume that we disagree with you, and let's assume for the sake of argument that we say there wasn't sufficient evidence here to show that the guns were used to facilitate the possession of his drugs. Would you want us to send it back to the district court if you're so confident she made that finding? You would take another crack at that? No, Judge. I think that the findings that the judge made would be sufficient, even if this was a finding that it was possession of drugs. It was just possession of drugs as a felony, and the firearm possession was in connection with felony possession of drugs. That finding is sufficiently stated in the record and is a reasonable inference, even if this court disagrees that a drug trafficking finding was actually made by this court. And I think that certainly it is true that the guideline commentary makes clear that if there's close proximity and there's drug trafficking, that there's this presumption that that four-level enhancement should apply. If it's not drug trafficking, then it's just like any other felony. And any other felony means we fall back on the rule that's stated in the guidelines, which is the firearms must have facilitated or had the potential of facilitating this other felony offense. And in that way, I think that the defendant's argument that this house, fortress theory, whatever, there was a concern about personal protection, protecting against the possibility of another robbery, I think that that undermines. This is Hawville. You know that better than I do. Yes, Judge. That's absolutely right. And I also know that if, in fact, the defendant was a victim of a robbery in Hawville and maybe was sending out photographs of himself possessing firearms to make other people aware that he's protecting himself, those firearms would serve a dual purpose to protect himself and his home, but also to protect every item that he possesses in the home to include. So, Counsel, is there any scenario under your theory in which possession of guns and possession of drugs at the same time, let's say in the same room, not to say in the house, wouldn't be for the purpose or facilitating or having potential to facilitate the possession? Judge, I think, of course, then it becomes a matter of degree in what the district court can properly and reasonably infer. Here, as you mentioned, Judge Barrett, this is 10 ounces approximately of marijuana. It wasn't simply a joint or something like that, although I'm not sure that that would be a felony. It would have to, of course, be a felony. Well, it's not a felony to possess the 299 grams, as I understand it, under Indiana law either. Isn't that correct? It certainly would be under. It's not a case I would necessarily prosecute, Judge, but it would be under federal law. A possession with intent to distribute. I understand in some ways it's a question begging to state that it's a possession with intent to distribute. For Indiana to draw that inference, you need 10 pounds of marijuana, as I understand the law. Judge, there's no doubt about it, but the cocaine, felony possession of cocaine under Indiana law would qualify. This was a half a gram? I think that's what it said in the record, yes, Your Honor. A half a gram of cocaine plus 10 ounces of marijuana worth, as Judge Barrett mentioned, a considerable amount of money, just based on what we've seen in these types of cases. I didn't do a Google search. I'm not sure what the cocaine would be worth, Judge. I didn't look at that one either. Didn't look, Judge. In this instance, though, we're dealing with three loaded firearms, including one that had over 20 rounds in the magazine. I think it was perfectly reasonable for Judge Pratt to say, look, what do you even have these for if not to protect something? That's something, even going along with what the defendant's theory is, is maybe to defend his house and other stuff from robbery, but certainly that would sweep into that category anything that he illegally possesses, felony possesses, to include marijuana. That does mean that any time you have drugs in the bedroom with guns, that it automatically, because that's always true, right? That it would also protect my TV and my cell phone. That certainly, Judge, it would fall back on that basic question, does it facilitate or have the potential to facilitate this other felony offense? If that other felony offense is possession of some type of drug, then I would say the answer is yes. This court may disagree. Certainly if it's not a reasonable inference to draw in the case of, let's say, Judge, that it was just that one half a gram of cocaine. There was no marijuana. There was no digital scale. There was, in fact, evidence that there was personal use of the cocaine, the straws, mirror that was not found in this particular case. Then maybe that would not be a reasonable inference to draw. I don't know, Judge, but I'm saying that in this case, I think it is a reasonable inference and this court should affirm. If there are no further questions, I'll rest on the brief. Thank you. Thank you, Mr. McCoskey. Ms. Varner, rebuttal. I don't have much to say, Your Honor, except to say that I think that the argument that the government is making is essentially trying to give no effect to the commentary and the guidelines, and it is trying to create a situation where if guns and drugs are in proximity to one another, that the district court may always find that they are in connection with one another. And I think in this case, there's no credible evidence that Mr. Briggs was trafficking in drugs. I don't think that conviction would stand up anywhere. And there is no connection between Mr. Briggs' possession of the firearms and possession of the drugs itself, simple possession. And for those reasons, we ask the court to vacate and remain for resentencing. Thank you. Thanks to both counsel. The case is taken under advisement. The court will be in recess until 930 tomorrow.